UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| v. | ) No. 04 CR 0705-1 |
| AARON PATTERSON | ) Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Defendant Aaron Patterson has been charged with conspiracy to distribute narcotics and with a weapons offense. Patterson, a self-described "freedom fighter, revolutionary, and professional troublemaker," argues that any alleged wrongdoing is excused by the "public authority" defense. Over the government's objection, this court convened a hearing at which Patterson was invited to present evidence he would offer at trial in support of that defense. For the reasons set forth here, the court concludes the evidence proffered by Defendant Patterson is insufficient to establish "public authority" under relevant legal standards, and sustains the government's objection to Patterson's reliance on such a defense at trial.

## FACTUAL BACKGROUND

Sixteen years ago, Defendant Patterson was the victim of a tragic miscarriage of justice. In 1989, he was convicted wrongly of murder and sentenced to death. Patterson spent thirteen years on Illinois's death row, before being pardoned by then-Governor George Ryan in 2003 on the basis of innocence. Patterson believes the key evidence in the case against him was a false confession which was the product of torture at the hands of Chicago Police Detective John Burge. Following his release, Patterson filed a lawsuit challenging his wrongful conviction and the alleged police misconduct. In addition, Patterson has become an outspoken activist on the matter of police corruption and other public wrongdoing. This activism has been targeted largely at City and state officials who, Patterson believes, have refused to prosecute Burge and other Chicago police officers and state prosecutors responsible for his conviction. In the course of his crusade,

Patterson has, among other things, forced his way into a meeting with Governor George Ryan, disrupted a press conference held by Chicago Mayor Richard Daley and United States Attorney Patrick Fitzgerald, and launched an unsuccessful campaign for state representative. Patterson testified that he initiated an investigation of his opponent, State Representative Patricia Bailey, which ultimately led to charges that Ms. Bailey lives outside the district she represents.

As a result of his activism, Defendant contends that the Chicago Police Department resolved to set him up and return him to prison under what he calls "Operation Revolving Door." Patterson claims that he learned of the Chicago Police Department's intentions from another community activist during March 2004. Through his contacts, Patterson learned that the government had arranged for a member of the Latin Kings street gang to work as a confidential informant and attempt to sell him illegal drugs. Members of the Latin Kings contacted Patterson and warned him to stay away from the informant, whom Patterson identified as Mario "the Fox" Maldonado.

Despite these warnings, Patterson felt that, given his history with the criminal justice system, it was incumbent on him to confront the confidential informant and expose the operation. After learning of his involvement with the police, Patterson met with the informant and asked the informant to help Patterson conduct a "reverse sting" to expose the Chicago Police Department's "dirty dealings" and attempts to set him up. Patterson assists that he and the CI agreed to meet, under government surveillance, so that Patterson could conduct "counter-surveillance." The fact that, at one point during their own surveillance of him, law enforcement officers observed Patterson tipping his hat confirms, in Patterson's view, that he recognized the officers and was conducting his own investigation. Patterson intended to obtain evidence, via camera, video and audio recordings, regarding the government's attempt to set him up, and bring the evidence to the United States Attorney because, at the time, he believed that only the Chicago Police Department and

State's Attorney were targeting him.[1] In light of the current charges in federal court, Patterson now believes that the U.S. Attorney is involved in what he claims is a conspiracy.

Patterson acknowledges that others might characterize some of his activities, and particularly his determination to meet with the confidential informant, as "bizarre," but he insists that his actions were motivated by a desire to ferret out corruption within the Chicago Police Department and State's Attorneys office. In light of these non-criminal motivations, Patterson, through counsel, raises the public authority defense. Specifically, he contends that, in conducting his counter-surveillance, he was acting under a belief that he had the authority to expose injustice and corruption within the law enforcement community on behalf of the community at large. In Patterson's words, "any citizen, if injustice is being done, should in some form or fashion take action."

## DISCUSSION

The public authority defense applies when a defendant is reasonably mistaken in believing that criminal activity was authorized by the government. The defense, which operates as an exception to the general rule that mistakes of law do not excuse the commission of a crime, is also known as entrapment by estoppel. The defense is "rarely available" under either moniker. *United States v. Rector*, 111 F.3d 503, 506 (7th Cir. 1997) (quoting *United States v. Howell*, 37 F.3d 1197, 1204 (7th Cir. 1994)), *overruled on other grounds by United States v. Wilson*, 169 F.3d 418 (7th Cir. 1999). "'In essence, it applies when, acting with actual or apparent authority, a government official affirmatively assures the defendant that certain conduct is legal and the defendant reasonably believes that official.'" *United States v. Neville*, 82 F.3d 750, 761 (7th Cir. 1996) (quoting *Howell*, 37 F.3d at 1203). In order to present a defense of public authority or entrapment

---

[1] Prior to the events leading to his arrest, Patterson claims to have attempted to bring this information to the attention of the U.S. Attorney. He eventually abandoned these attempts due to the office's lack of responsiveness.

by estoppel, the defendant must show that: (1) he was misled by a state official; (2) the official actively misled him; (3) the reliance on the official's misleading statement was "reasonable in light of the identity of the agent, the point of law represented, and the substance of the misrepresentation"; and (4) the reliance was in good faith. *Rector*, 111 F.3d at 506 (citing *Howell*, 37 F.3d at 1204).

Defendant concedes that his actions were not motivated by, or undertaken in reliance upon, the statements or representations of any public official. Instead, he relies on his subjective belief that he has a right and duty to "expose injustice in his community" on behalf of the "community and people of Illinois." Such a reliance is not encompassed by the public authority defense as set forth in the cases addressing this theory, nor has Patterson cited any case law to support it. Any purported reliance on public authority, actual or apparent, must be objectively reasonable.[2] *Rector*, 111 F.3d at 506. Patterson's insistence that the community authorized him to commit drug and firearm crimes is far from reasonable.

The cases cited by Defendant in support of the apparent public authority defense do not support his position here. In *United States v. Anderson*, 872 F.2d 1508 (11th Cir. 1989), two members of the Army Special Forces were charged with conspiring to steal explosives from Fort

---

[2] It should be noted that the majority of Circuits have denied the existence of an "apparent public authority" defense. *See, e.g., United States v. Fulcher*, 250 F.3d 244, 254 (4th Cir. 2001) ("the defense of public authority requires reasonable reliance upon the *actual* authority of a government official to engage him in a covert activity"); *United States v. Pitt*, 193 F.3d 751, (3d Cir. 1999) (defense limited to "those situations where the government agent in fact had the authority to empower the defendant to perform the act in question"); *United States v. Holmquist*, 36 F.3d 154, 161 nn. 6-7 (1st Cir. 1994) ("The nonexistent defense of apparent public authority . . . must not be confused with the potentially viable defense of actual public authority which may come into play when a defendant undertakes certain acts, reasonably relying on the statements of a government agent cloaked with actual authority."); *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n. 18 (11th Cir. 1994) ("If the agent had no such power, then the defense may not rest on the 'public authority'; reliance on the apparent authority of a government official is not a defense in this circuit, because it is deemed a mistake of law which generally does not excuse criminal conduct."). Nevertheless, the Seventh Circuit appears to have left open the possibility of a valid apparent public authority defense. See *Neville*, 82 F.3d at 761.

Bragg and selling this material to undercover government agents posing as arms dealers. Upon their arrest, defendants asserted what the court called an "apparent authority" or "CIA defense." *Id.* at 1510. In short, they claimed that they acted under the reasonable belief that they had CIA-authorization to covertly steal the weapons, which were to be sent to the "contras," the U.S.-backed anti-Sandinista forces in Nicaragua. *Id.* at 1512-13. The Eleventh Circuit upheld the trial court's refusal to allow the apparent authority defense, holding that "[b]ecause the CIA had no real authority to violate the statutes of the United States, appellants' theory that they were acting on apparent authority of an alleged CIA agent is not a viable defense." *Id.* at 1516. Defendant Patterson has not identified any government agent as having authorized him to violate federal gun or drug laws. Indeed, Patterson asserts the CI did not mislead him at all.

The second case cited by Defendant, *United States v. Barker*, 546 F.2d 940 (D.C. Cir. 1976), involved two of the Watergate "footsoldiers" who, at the direction of Nixon administration official and long-time CIA agent E. Howard Hunt, broke into the office of a psychiatrist in an attempt to obtain information about Daniel Ellsberg in the wake of his release of the Pentagon Papers. Indicted for conspiring to violate the Fourth Amendment rights of the psychiatrist, the defendants attempted to raise a defense based upon their reasonable good faith reliance on Hunt's apparent authority. *Id.* at 946. According to the defense, this reliance constituted a mistake of fact "coupled with" a mistake of law which negated the *mens rea* required under the conspiracy statute. *Id.* While conceding that mistakes of law do not generally constitute a defense to commission of a crime, the D.C. Circuit held that the trial court erred in refusing to allow the defense. The court noted that there was "abundant evidence" that the defendants "honestly and reasonably believed they were engaged in a top-secret national security operation lawfully authorized by a government intelligence agency." *Id.* at 949. The court compared this reliance to a police officer's reliance on an invalid judicial search warrant. *Id.* at 947. In the words of one member of the panel, "I think it plain that a citizen should have a legal defense to a criminal charge arising out of an unlawful arrest

5

or search which he has aided in the reasonable belief that the individual who solicited his assistance was a duly authorized office of the law." *Id.* at 954.

Although *Barker* recognized an apparent authority defense, Patterson's reliance on the case is misplaced. The decision was decided by a 2-1 vote; although the majority agreed that the defendant might have a limited mistake of law defense, the two judges disagreed over the parameters of that defense. *See United States v. Duggan*, 743 F.2d 59, 83-84 (2d Cir. 1984) (discussing the precedential value of *Barker*). Judge Merhige did not recognize an apparent authority defense, but rather relied on the traditional exception to the mistake of law rule for reasonable reliance upon the statement of an official charged with interpretation, administration, or enforcement in that legal area. *Barker*, 546 F.2d at 955 (Merhige, J., concurring). Judge Wilkey did recognize an apparent authority defense, but Patterson does not meet its terms. Under Judge Wilkey's opinion, an apparent authority defense is only available where a defendant could show both (1) facts justifying the reliance upon the official's apparent authority and (2) a legal theory upon which to base a reasonable belief that the official possessed such authority. *Id.* at 949. Unlike the *Barker* defendants whose belief that they were acting pursuant to the lawful authority of the White House was found to be reasonable, Patterson has not pointed to any government official upon whose authority he believed he was acting, nor any factual or legal theory suggesting that he held a reasonable belief that he had such authority to engage in drug trafficking or possession of a weapon. To the contrary, Patterson testified at the hearing that he knew throughout the time of the alleged offense conduct that he was being "set up."

Having failed to establish a public authority defense, Patterson next attempts to present a defense based upon a private citizen's right of arrest. Under Illinois law, "[a]ny person may arrest another when he or she has reasonable grounds to believe that an offense other than an ordinance violation is being committed." 725 ILL. COMP. STAT. 5/107-3. Under the statute, however, a private citizen may not commit crimes in the course of making a citizen's arrest. *See People v. Kirvelaitis*,

315 Ill. App.3d 667, 734 N.E.2d 524, 529 (2nd Dist. 2000) (police officer making arrest outside of jurisdiction as a private citizen did not have right to exceed speed limit in the course of making arrest). The statute does not authorize a private citizen to run private sting operations, during the course of which he commits a crime. Notably, Patterson has not identified any person as the subject of an arrest, nor has he outlined the specific wrongdoing he believed the subject was committing. Instead, he asserts generally that he was trying to expose corruption within the Chicago Police Department; however worthy this goal may be, it is not encompassed by the Illinois citizen's arrest statute. Moreover, although Patterson was assertedly wronged by Officer Burge and disturbed by the government's failure to prosecute Burge, he has not explained how the Chicago police or any federal officers acted improperly in the course of investigating Patterson himself in the spring and summer of 2004.

Finally, Patterson suggests that he reasonably believed that he was investigating police corruption, and that this belief negates the *scienter* requirement of the charged offenses. As the government notes, Patterson does not deny in his motion that he knowingly and intentionally committed the charged crimes. Instead, he claims that any crimes were committed while he believed that "he was working on behalf of the citizens of Illinois, for the local CPD as well as the Federal Government which were unable to arrest and prosecute those whom he believed had perpetrated crimes against the community." (Defendant's Response to Government's Motion for Clarification of the Defendant's Public Authority Defense, at 2.) The defense suggests that this belief negates the specific state of mind for the charged crime of conspiracy.

Such a "good motive" defense has been rejected by other courts. In *United States v. Fox*, 248 F.3d 394, 407-07 (5th Cir. 2001), *judgment vacated on other grounds by Fox v. United States*, 535 U.S. 1014 (2002), for example, the Fifth Circuit rejected a defendant's claim that he had received child pornography in order to "'deliver up these defilers of children' to the proper authorities for well-deserved punishment." *Id.* at 407. Noting that "standing alone, good motive

is no defense," the court held that the defendant's good motives did nothing to negate the fact that he had knowingly and voluntarily received child pornography, in violation of federal statute. *Id.* at 407-08. The court added that though the defendant presented his defense as one of "mistake of fact," in reality it could more accurately be characterized as a public authority defense, which required defendant to show that a government official authorized the covert activity. *Id.* at 408.

Similarly, Patterson's claimed motives do not show that his commission of the charged crimes was not knowing or voluntary. Patterson's subjective belief that his actions were somehow justified by his community activism may be relevant to his credibility; that subjective belief does not does not constitute a valid defense in the absence of a showing that this acts were authorized by some public official. No such showing has been made.

## CONCLUSION

In light of Defendant's failure to present evidence supporting his public authority defense, the government's motion to bar that defense is granted.

ENTER:

Dated: May 20, 2005

REBECCA R. PALLMEYER
United States District Judge