

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) No. 04 CR 0705-1 |
| | ) |
| AARON PATTERSON | ) Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Defendants Aaron Patterson and Mark Mannie have been charged with federal gun and weapons violations. Trial is scheduled to begin later this month. On February 10 and May 6, 2005, the government filed pretrial motions *in limine*. Some months after the filing of the initial motions, on May 11, 2005, after receiving no response from Defendant, the court deemed the motions unopposed and granted them. Defendant Aaron Patterson, through his counsel Demitrus Evans and Paul Camarena, now moves for the court to reconsider this ruling. In addition, Defendant Patterson has filed a number of his own motions *in limine*. The court will address all such motions below.

I.  **Government's Motions *in Limine***

   A.  **Motion to Preclude Reference to Defendant's Prior Wrongful Conviction**

The government moves *in limine* to preclude any evidence of, or reference to, Defendant Patterson's murder conviction, death sentence, imprisonment, and subsequent pardon, as well as his currently pending civil suit regarding his wrongful conviction, on the basis that such information is (1) not relevant to this case, and (2) likely to result in confusion and unfair prejudice. The government urges that the only possible use of such evidence would be to attempt to elicit jury nullification.

In general, evidence of a prior pardon or acquittal is not relevant except in determining whether the present prosecution is barred by double jeopardy or collateral estoppel. *See United States v. Jones*, 808 F.2d 561, 566 (7th Cir. 1986). Nevertheless, trial courts have broad discretion

to determine the admissibility of evidence. *United States v. Hattaway*, 740 F.2d 1419, 1424-25 (7th Cir. 1984), *citing United States v. Brown*, 688 F.2d 1112, 1115 (7th Cir. 1982). Courts routinely use this discretion in favor of admitting background evidence, such as basic biographical data concerning a witness or defendant. *See, e.g., United States v. Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988) (court properly admitted evidence of defendant's prior military service and erred, albeit harmlessly, in excluding defendant's testimony that he had never been arrested or convicted of a crime); *Government of Virgin Islands v. Grant*, 775 F.2d 508, 513 (3d Cir. 1985) ("We do not gainsay that the practice of admitting evidence as to a lack of prior arrest, as background evidence . . . makes some sense."). Such evidence is generally seen as having some limited value to the jury in assessing the witness or defendant's credibility.

A criminal defendant who takes the stand would ordinarily be entitled to testify concerning his background and educational or employment history. Patterson lacks such history at least in part because he spent several years in state custody on false charges. If there were no dispute about the validity of his prior conviction, presumably the government would not object to its admission. Patterson concedes that some of his activities might be characterized as "bizarre," but argues that they may be understandable in light of his experiences. The court believes that he is entitled to offer at least some limited evidence concerning his own history as relevant to his credibility. Such evidence will be limited to the basics of Patterson's case – his prior murder conviction, his death sentence, his time on death row, and his ultimate pardon by Governor Ryan. Beyond that, Defendant will be precluded from eliciting any evidence or testimony regarding the specific details of his wrongful conviction, pardon, and pending civil case, absent some further showing of its relevance. As noted, such evidence will be admitted for the limited purpose of the jury's assessment of Patterson's credibility.

B.  **Motion to Preclude Argument or Evidence Designed to Elicit Jury Nullification**

Through counsel, Defendant Patterson has acknowledged that he is not permitted to argue for jury nullification. By agreement, the government's motion *in limine* barring argument or evidence designed to elicit jury nullification is granted.

C.  **Motion to Preclude Argument or Evidence Relating to Public Authority Defense**

The court has addressed this matter in a separately-issued opinion. Briefly, the court has concluded that the evidence presented by Patterson at a hearing on this issue does not support a "public authority" defense under relevant legal standards. Argument for such a defense is barred, though some of the evidence Patterson has offered in support of that theory may be admissible, in some limited fashion, as relevant to his credibility.

D.  **Motion to Preclude Argument or Evidence Relating to Entrapment Defense**

The government moves *in limine* to preclude Defendant from arguing or otherwise introducing evidence relating to a defense of entrapment. In order to raise an entrapment defense, a defendant "'must present evidence of both the Government's inducement and his own lack of predisposition.'" *United States v. Blassingame*, 197 F.3d 271, 279 (7th Cir. 1999), *quoting United States v. Teague*, 956 F.2d 1427, 1434 (7th Cir. 1992). "As a prerequisite for presenting the defense of entrapment to the jury, the defendant must produce sufficient evidence upon which a rational jury could have inferred that he was entrapped into committing the crime charged." *United States v. Santiago-Godinez*, 12 F.3d 722, 727 (7th Cir. 1993). Defendant has not met this burden.

In regard to the first prong—government inducement—the Seventh Circuit has observed that a law-abiding person "can be induced to commit a crime only by grave threats, by fraud . . . or, in the usual case in which entrapment is pleaded, by extraordinary promises—the sorts of promises that would blind the ordinary person to his legal duties." *Santiago-Godinez*, 12 F.3d at 728 n.5. Tracking this language, Patterson contends that in this case "the Government's inducements would

3

have blinded the ordinary person in his position [to his legal duties]." (Defendant's Motion to Reconsider, at 7.) In support of this claim, Defendant points to his own wrongful conviction, and the failure of the state and federal authorities to prosecute Commander Jon Burge, the Chicago Police officer responsible for the torture-induced confession that led to Patterson's murder conviction and death sentence. The court and indeed the jury might well sympathize with Patterson's frustration at government authorities' failure, to date, to bring Mr. Burge to justice.[1] Whatever frustration he might feel, Defendant has not articulated how the government's purported failure induced him to engage in unlawful behavior, specifically weapons and drug offenses. Defendant merely asserts that the confidential informant offered "the opportunity to finally expose law enforcement corruption." (Defendant's Motion to Reconsider, at 7.) Having listened to Mr. Patterson's testimony on this matter, the court remains unable to comprehend how Patterson's alleged purchase or sale of drugs from a government informant offers an opportunity to expose such corruption. Indeed, Patterson's subsequent arrest on drugs and weapons charges would appear only to weaken his effectiveness as a spokesperson for the rights of the wrongfully convicted, as well as his calls for the prosecution of those responsible for his murder conviction. In any event, the court concludes he has not presented evidence sufficient to support an entrapment defense.

E. **Motion to Exclude Evidence of Defendant's Lawful Behavior**

The government moves in limine to exclude all evidence of Defendant's lawful conduct, outside of any reputation or opinion evidence offered by character witnesses within the precepts

---

[1] Prior to the events leading to his arrest, Patterson claims to have attempted to bring this information to the attention of the U.S. Attorney. He eventually abandoned these attempts due to the office's lack of responsiveness. One of the court's colleagues has observed that "It is now common knowledge that in the early to mid-1980s Chicago Police Commander Jon Burge and many officers working under him regularly engaged in the physical abuse and torture of prisoners to extract confessions." United States ex rel. Maxwell v. Gilmore, 37 F. Supp. 2d 1078, 1094 (N.D. Ill. 1999).

4

of Rule 405(a) of the Federal Rules of Evidence. Specifically, the government argues that evidence of Defendant's community activism should not be admitted outside of the strict guidelines of Rule 405(a). Defendant concedes that evidence of lawful behavior is generally not admissible. Given the special circumstances surrounding this case, however, he urges that evidence of his community activism, including his lobbying for the prosecution of Jon Burge and unsuccessful campaign for a seat in the Illinois House of Representatives, "tends to establish entrapment" insofar as these failed efforts led him to conduct his "reverse-sting" in order to expose corruption in the law enforcement community.

As discussed above, Defendant has not presented sufficient evidence to raise an entrapment defense. Evidence of Defendant's lawful conduct, including any community activism on behalf of the wrongfully convicted, will be excluded except insofar as it comports with Rule 405(a).

### F. Motion to Preclude Commentary Regarding Discovery in Presence of Jury

By agreement, the government's motion *in limine* barring discovery requests in the presence of the jury is granted.

### G. Motion to Preclude Evidence or Argument Regarding Penalties

The government moves *in limine* to bar Defendant from introducing evidence of, or soliciting testimony regarding, any potential penalties that could be imposed if Defendant is convicted. Defendant objects to this motion on the basis that the indictment includes a reference to the statute that sets forth a penalty for the weapons offense with which Patterson is charged, 18 U.S.C. § 824. It is well-settled in the Seventh Circuit, however, that "arguing punishment to a jury is taboo." *United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997), vacated on other grounds, 526 U.S. 813 (1999); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997) ("[T]he practice of informing juries about the sentencing consequences of their verdicts is strongly

5

disfavored.") The court is uncertain how the government's citation to a penalty statute in the charging document requires an exception to this principle, and the government has agreed to withdraw the sentencing allegations included in the indictment in the wake of *Blakely v. Washington*, 542 U.S. ___, 124 S.Ct. 2531 (2004). The motion is granted.

### H.     Motion to Preclude Cross-Examination Based on Arrests

The government moves *in limine* to preclude Defendant from inquiring into any past arrests of government witnesses. The parties agree that cross-examination based on prior arrests is not permissible absent special facts bearing on the witness' character for truthfulness under Rule 608(b) of the Federal Rules of Evidence. By agreement, the government's motion to bar any inquiry that exceeds this narrow exception is granted.

### I.     Motion to Preclude Inquiry into Details of Convictions

The government moves to preclude Defendant from inquiring into the details of the prior convictions of any government witnesses. As Defendant concedes, Rule 609 generally precludes inquiry into the factual details surrounding a witness' prior convictions for impeachment purposes. *See United States v. Chaverra-Cardona*, 669 F. Supp. 1445, 1446-47 (N.D. Ill. 1987), *citing United States v. Castro*, 788 F.2d 1240, 1245-46 (7th Cir. 1986). Defendant also notes, however, that Rule 608(b) would permit inquiry into any false testimony that a convicted witness may have given at his or her trial. Also, Defendant urges that if a government witness has entered into a plea agreement, he should be permitted to inquire into the witness' understandings of the plea agreement. The court agrees. The government's motion is granted, but the court will permit inquiry into any false testimony and will permit impeachment of any government witness, if appropriate, by reference to his or her plea agreement.

### J.     Motion to Bar Cross-Examination Based on Other "Bad Acts" of Witnesses

The government moves *in limine* to preclude Defendant from inquiring into the specific bad

acts of government witnesses without first demonstrating that the acts are probative of truthfulness under Rules 611 and 608(b). Defendant has not responded to or moved to reconsider the court's earlier granting of this motion, and the court therefore adheres to its determination that the motion should be granted.

### K. Motion to Bar Allegations of Government Misconduct

The government moves *in limine* to bar Defendant from introducing or eliciting evidence at trial regarding his unsubstantiated allegations that the government possesses undisclosed evidence of his "reverse-sting" operation. Specifically, the government asserts that Defendant should be precluded from making allegations, in front of the jury, that the government has (1) violated its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), or (2) acted outrageously.[2] Defendant has not responded to this motion. As Patterson has not identified any *Brady* violations or any government misconduct in connection with these charges, the court will preclude such evidence, except as discussed above.

## II. Defendant's Motions *in Limine*

### A. Motion to Exclude Photographs

Defendant moves *in limine* to preclude the government from introducing photographs taken of a store during its investigation. Noting that Patterson had no control over the store and had no business relationship with the store or its owners, Defendant contends that the photographs are irrelevant, and that their admission would only serve to incite or confuse the jury. Defendant has not identified or attached the photographs to which he is referring, nor has he explained why such photographs would be prejudicial. Without access to the evidence itself, the court is unable to make a ruling on the motion and will reserve the issue for trial. Defendant's motion is denied

---

[2] On March 4, 2005, the court denied Defendant's motion to dismiss the indictment based on selective prosecution. (Docket No. 78.)

7

without prejudice to reconsideration on review by the court of the photographs at issue.

### B. Motion to Bar "Spliced Tapes"

Defendant moves *in limine* to exclude the admission of audio tapes which "appear to be spliced or cut out." Again, however, Defendant has failed to identify the specific evidence to which he is referring, nor has he provided the court with the tapes challenged here. Without access to the evidence itself, the court is unable to make a ruling on the motion and will reserve the issue for trial. This motion is denied without prejudice.

### C. Motion to Exclude Testimony of Government Experts

Defendant moves to bar the testimony of two government experts, ATF Special Agents Michael Casali and Michael Walsh, concerning the guns Defendant allegedly purchased. Specifically, Casali will testify that the MAC-10 allegedly purchased by Defendant fits the legal definition of a "machine gun" and will describe the gun's potential use by street gang members and narcotics traffickers. Special Agent Walsh will testify that the weapons traveled through interstate commerce, an element of the charged weapons offense. Defendant asserts that such testimony is irrelevant, and likely "to prejudice the jury into believing that the case is really about guns passing over state lines, etc. and large street gangs although [neither] the indictment, nor the discovery shows [any] evidence of this." (Defendant's Motions *in Limine*, at 2.) This motion is granted in part and denied in part. Testimony as to the nature of the weapon and its travel in interstate commerce is directly related to the charged weapons offense and admissible for that reason. To the extent agents testify concerning use of the gun by street gang members of narcotics traffickers, the court will bar such evidence absent a showing that Defendant knew or should have known of such likely use, and a determination that evidence concerning street gangs is not unduly prejudicial.

### D. Motion to Exclude Evidence of Defendant's Background on Death Row

By agreement, Defendant's motion *in limine* excluding statements and records obtained

8

while Defendant was incarcerated on Death Row is granted.

## III. Defendant's Motion to Exclude Taped Statements of Confidential Informant

Defendant moves *in limine* to exclude tape recorded conversations between Defendant and the confidential informant. He claims that the government bribed the confidential informant to induce Defendant to make self-incriminating statements in violation of his Fifth Amendment rights. As an initial matter, the Fifth Amendment protection against self-incrimination "does not apply to noncoercive conversations with undercover informants." *United States v. Cope*, 312 F.3d 757, 773 (6th Cir. 2002), citing *Illinois v. Perkins*, 496 U.S. 292 (1990) (undercover law enforcement officer posing as fellow inmate need not give *Miranda* warnings to incarcerated suspect before asking questions that could elicit incriminating response). Defendant's remaining concerns can be addressed during cross-examination of government witnesses, namely the confidential informant. The motion is otherwise denied.

## IV. Defendant's Motion to Bar the Use and/or Mention of Guns

Defendant seeks to exclude any evidence of the weapons he allegedly purchased from a confidential informant on the grounds that the guns were "prop" guns, which had been out-of-circulation in the possession of the Department of Alcohol, Tobacco, and Firearms (ATF) for at least ten years prior to this incident. Defendant contends that the fact that the guns may have been manufactured out of state does not establish sufficient nexus to interstate commerce necessary to establish liability under the charged weapons statute, 18 U.S.C. § 922. Defendant cites no authority for this argument, which appears to have no basis in case law. Evidence that the firearms in question were transported in interstate commerce, at any point, is sufficient to establish the "minimal nexus" required by the Commerce Clause. *Scarborough v. United States*, 431 U.S. 563, 575 (1977) ("[W]e see no indication that Congress intended to require any more than the minimal nexus that the firearm have been, at some time, in interstate commerce."); *United States v. Lewis*,

100 F.3d 49, 50 (7th Cir. 1996). That these guns had possibly been taken out of circulation and into the custody of the ATF long before their appearance in this case does not extinguish their past connection to interstate commerce. Moreover, Defendant presents no support for his novel theory that the fact that he has been charged with constructive, rather than actual, possession of the firearms in question alters this analysis in any manner. Defendant's motion is denied.

V. Conclusion

For the reasons explained above, the court grants in part and denies in part the Defendant's motion to reconsider the court's granting of the government's motions *in limine* (Doc. No. 113), grants in part and denies in part Defendant's motions *in limine* (Doc. No. 108), and denies Defendant's motion to bar the use and/or mention of guns at trial (Doc. No. 81) and motion to exclude tape recorded conversations with confidential informant (Doc. No. 107).

ENTER:

Dated: May 23, 2005

REBECCA R. PALLMEYER
United States District Judge