# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v. ) | No. 04 CR 0705 |
| ) | |
| AARON PATTERSON and MARK ) | Judge Rebecca R. Pallmeyer |
| MANNIE, Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Aaron Patterson and Mark Mannie are charged in a thirteen-count indictment with conspiracy to distribute heroin and marijuana, possession with intent to distribute heroin and marijuana, and illegal possession of a firearm, all stemming from a series of incidents between March and August 2004. The government has moved *in limine* to introduce "other acts" evidence pursuant to Rule 404(b) of the Federal Rules of Evidence and the "inextricably intertwined" standard established by the Seventh Circuit. Specifically, the government seeks to admit evidence that Defendant Patterson is a high-ranking member of the P Stones, a Chicago street gang, and that Defendant Mannie is likewise a member of the P Stones. In addition, the government seeks to admit evidence of Patterson's prior purchases and discussions about purchasing marijuana, cocaine, PCP, and firearms, as well as evidence that Patterson possessed or controlled a large number of firearms at the time the charged crimes were committed.

Defendant Patterson objects, arguing that this evidence is not admissible under either the Federal Rules of Evidence or Seventh Circuit case law and that its admission would be unfairly prejudicial. For his part, Defendant Mannie adopts the arguments made by Defendant Patterson, and also argues that the proposed evidence of gang membership is irrelevant and would, if admitted, violate his due process rights. For the reasons explained here, the government's motion is granted in part and denied in part without prejudice.

## DISCUSSION

### A. Legal Standard

Rule 404(b) bars the admission of evidence of other crimes, wrongs or acts, "to prove the character of a person in order to show action in conformity therewith." FED. R. EVID. 404(b). The Seventh Circuit has adopted a four-part test governing the admissibility of "other acts" evidence under Rule 404(b). Under the test, such evidence may be admitted where the government has established that the evidence: (1) is directed toward establishing a matter in issue other than the defendant's propensity to commit the charged crime; (2) is similar enough and close enough in time to be relevant to the matter at issue; (3) is sufficient to support a jury finding that the defendant committed the other act; and (4) has probative value that is not substantially outweighed by the danger of unfair prejudice. *United States v. Green*, 258 F.3d 683, 694 (7th Cir. 2001), *citing United States v. Williams*, 238 F.3d 871, 874 (7th Cir. 2001); *United States v. Moore*, 115 F.3d 1348, 1354 (7th Cir. 1997).

Under the inextricably intertwined doctrine, however, evidence of "other acts" is admissible if the evidence is intricately related to or "inextricably intertwined" with the acts charged in the indictment without reference to the provisions of Rule 404(b). *See United States v. Ramirez*, 45 F.3d 1096, 1102 (7th Cir. 1995), *citing United States v. Hargrove*, 929 F.2d 316, 320 (7th Cir. 1991); *United States v. Elder*, 16 F.3d 733, 737 (7th Cir. 1994). In determining whether the doctrine applies, the question is whether:

> the evidence is properly admitted to provide the jury with 'a complete story of the crime [on] trial,' . . . whether its absence would create a 'chronological or conceptual void' in the story of the crime, . . . or whether it is 'so blended or connected' that it incidentally involves, explains the circumstances surrounding, or tends to prove any element of, the charged crime.

*Ramirez*, 45 F.3d at 1102 (internal quotations omitted). Instead of relying on the four-part 404(b) test, the admissibility of inextricably intertwined evidence is

2

determined solely by reference to the Rule 403 balancing test.[1] *United States v. Gibson*, 170 F.3d 673, 680 (7th Cir. 1999) (citations omitted).

## B. Defendant's Membership and Leadership Role in P Stones Gang

At the time of the crimes in question, the government asserts, both Defendants Patterson and Mannie were members of the P Stones street gang, and Patterson was a high-ranking member. As evidence of Patterson's status, the government seeks to introduce a number of conversations between Defendant and a confidential government informant ("CI"), a member of the Latin Kings street gang, regarding Defendant's gang territory and his efforts to maintain control of that territory. In addition, the government seeks to present evidence of a conversation in which Defendant and the CI discussed the possibility of organizing a meeting of leaders of various Chicago street gangs, including the Gangster Disciples, Black Disciples, and Four Corner Hustlers, as well as the P Stones and Latin Kings, to agree to act in concert to force entertainers to use services (including marijuana, alcohol, and women) provided by the gangs. The government also intends to offer evidence that Defendant introduced the CI as a "King Brother," which according to the CI demonstrated that he, as a Latin King, was in an allied gang and therefore trustworthy. Finally, the government proffers evidence that Patterson's co-defendant Mark Mannie and the CI exchanged two sets of handshakes used by the P Stones and Latin Kings street gangs, of which they were members, during the gun and drug transaction that is the basis for these charges.[2] The

---

[1] Rule 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
FED.R.EVID. 403.

[2] Defendant Mannie, through his attorney, agues that these purported gang handshakes are the only 404(b) evidence the government seeks to admit regarding Mannie's alleged gang membership. Assuming this is true, the limited nature of gang membership evidence
(continued...)

government argues that this evidence is relevant in showing the relationship between the Defendant Patterson, his co-defendants, and the CI. In the government's words, the evidence "completes what would otherwise be a 'conceptual void' in the story of the crime by explaining the relationship between Patterson [and his co-defendants], their respective roles in the marijuana, heroin, and firearms conspiracies, and their motives." (Government's Brief, at 8.)

Courts have recognized that evidence of gang membership may be highly prejudicial to criminal defendants. The Seventh Circuit has observed:

> Gangs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior. There is therefore always the possibility that a jury will attach a propensity for committing crimes to defendants who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict. Guilt by association is a genuine concern whenever gang evidence is admitted.

United States v. Irvin, 87 F.3d 860, 865 (7th Cir. 1996), citing United States v. Thomas, 86 F.3d 647, 652-53 (7th Cir. 1996). In light of these risks, "[e]vidence of gang involvement must be considered carefully to avoid undue prejudice." United States v. Richmond, 222 F.3d 414, 417 (7th Cir. 2000), citing Thomas, 86 F.3d at 652.

Nevertheless, courts have admitted evidence of gang membership in appropriate circumstances. See, e.g., United States v. Montgomery, 390 F.3d 1013 (7th Cir. 2004) (evidence of gang membership admissible to show defendant's motive for carrying a weapon); United States v. Hattaway, 740 F.2d 1419, 1425 (7th Cir. 1984) (evidence of motorcycle gang lifestyle admitted to provide accurate description of kidnapping victim's "ordeal"). Among the situations in which courts have properly admitted evidence of gang membership are those in which, as here, the government is proceeding under a constructive possession theory, for which such membership may be relevant. See United States v. Lewis, 910 F.2d 1367, 1372 (7th Cir. 1990) (evidence of gang membership admitted to show constructive possession of weapon in trunk of car in which all

---

[2](...continued)
goes to its weight, not its admissibility.

4

passengers were gang members). In this case, the government is proceeding on a constructive possession theory with regard to the federal weapons charge. Specifically, the government alleges that Defendant Patterson directed co-defendant Mark Mannie to pick up four firearms that Patterson had purchased from the CI. Under the government's theory, Patterson's position as a leader of the P Stones gang explains his ability to direct Mannie to pick up the firearms, potentially exposing Mannie while insulating himself from criminal liability. (Government's Brief, at 11.) Although much of the gang membership evidence proffered by the government appears to go well beyond this limited purpose, the court believes that, absent a stipulation, some evidence of Patterson's and Mannie's gang membership is admissible for the limited purpose of addressing this theory of constructive possession and explaining the manner in which the gun purchases were allegedly carried out.

Evidence of Defendants' gang membership should not be admitted here for any broader purposes, such as to prove motive for the purchase of the firearms, or as circumstantial evidence of their participation in the alleged conspiracy. Unlike other cases in which evidence of gang membership was admitted to demonstrate motive, the government has not suggested that Defendants' alleged gang membership was the direct cause or reason for the crime. *Cf. Montgomery*, 390 F.3d at 1018 (evidence of gang membership admissible to show motive when defendant had stated that he had brought gun to festival because of the possibility of a confrontation with a rival gang); *United States v. Sargent*, 98 F.3d 325 (7th Cir. 1996) (gang membership admitted where defendant had allegedly made illegal gun purchases on behalf of gang). Nor does the court believe that the admission of evidence regarding Defendant's gang membership is necessary to establish the existence of a conspiracy. *Cf. United States v. Suggs*, 374 F.3d 508, 516 (7th Cir. 2004) (gang membership admissible as circumstantial evidence of conspiracy to distribute crack cocaine; evidence there showed that only those authorized by the gang were permitted to sell crack at the relevant location).

5

At a number of pre-trial hearings, Defendant Patterson has urged that the evidence will show he told the CI he did not want guns delivered to himself. To the extent that Defendant Patterson pursues this theory at trial, the government will be permitted to counter such an assertion with its own interpretation of the recorded conversations: namely, that Patterson wanted the guns delivered not to himself but to a lower-ranking gang member, Defendant Mark Mannie. The court concludes that evidence of Defendants' gang membership and of the Defendants' ranks will therefore be admissible in support of the government's constructive possession theory, to explain Patterson's ability to direct that the guns purchased from the CI be delivered to Mannie rather than himself. If such evidence is introduced, the court will advise the jury that (a) gang membership in and of itself is not illegal, and (b) they must not consider the evidence concerning gang membership for any other purpose beyond that discussed above.

## C. Defendant's Discussions and Purchases of Cocaine and Firearms

The government also seeks to introduce evidence that in 2003, Defendant Patterson discussed the possibility of purchasing firearms, marijuana, and cocaine from the CI. In addition, the government purports to have evidence that the CI sold Patterson marijuana on two or three occasions in late summer and fall of 2003.

The government argues, first, that these prior incidents involving Defendant Patterson and the CI are admissible under the inextricably intertwined doctrine, but the court is not persuaded. In support of this theory, the government asserts that Patterson's willingness to conduct illegal transactions with the CI "makes much more sense" in light of his prior criminal history with the CI. (Government's Brief, at 13.) In the court's view, such evidence is not necessary to present "a complete story of the crime," and its absence does not leave a "chronological or conceptual void" in the story of the alleged crime. *Ramirez*, 45 F.3d at 1102. The evidence is not admissible under the inextricably intertwined doctrine.

The government argues more forcefully that the evidence is admissible pursuant to Rule 404(b) to demonstrate knowledge, intent, plan, or absence of mistake. In a number of cases cited by the government, evidence of prior illegal drug activity has been admitted to demonstrate a defendant's knowledge or intent. *See, e.g., United States v. Wilson*, 31 F.3d 510, 514 (7th Cir. 1994) (admitting evidence of prior drug transaction to show that defendant "was familiar with the cocaine business and was not some innocent bystander"); *United States v. Kreiser*, 15 F.3d 635, 640 (7th Cir. 1994) (past drug transaction admitted to show that defendant "was familiar with the cocaine business and not some hapless fool mistakenly caught up in an overzealous law enforcement action"). The Seventh Circuit has cautioned, however, that evidence of prior drug activity is not "*always* admissible under Rule 404(b) in drug prosecutions." *United States v. Johnson*, 137 F.3d 970, 974 (7th Cir. 1998), *citing United States v. Beasley*, 809 F.2d 1273, 1278-80 (7th Cir. 1987).

The court will sustain Patterson's objections to admission of the incidents in 2003 if it appears they are being offered solely to show his propensity to distribute drugs. The court is not inclined to bar the evidence categorically prior to trial, however, as it may well be admissible to establish knowledge or intent. For example, if Patterson suggests that he did not know that the CI was talking about illegal narcotics, or that there were other reasons for his encounters with the CI, or denies ever having met with the CI for any reason, the door may well be opened to admission of this type of evidence. Until such situations arise, the court will reserve judgment on the issue.

### D. Defendant's Discussions with CI About Purchasing Cocaine and PCP

The government seeks to introduce discussions Defendant had with the CI regarding whether the CI would be able to provide him with PCP and large quantities of cocaine. Among these conversations, the government specifically notes a June 23, 2004 conversation in which Patterson discussed his practice of selling cocaine, and a July 16, 2004 conversation in which he

7

raised the issue of purchasing PCP from the CI. The government now urges that these conversations are inextricably intertwined with the charged criminal acts because they occurred contemporaneously with, and are in fact "interwoven throughout the recorded conversations."[3] (Government's Brief, at 14.)

The conversations cited by the government are among a series of taped conversations between Patterson and the CI; the two particular portions cited by the government occurred within larger conversations that do address the charged conduct. With respect to the June 23, 2004 conversation, the court is nevertheless not satisfied that the evidence is admissible under the inextricably intertwined doctrine. In that conversation, after a discussion concerning a purchase of marijuana and firearms, the conversation turned to a discussion of the difficulties that Patterson had experienced in collecting money from his narcotics customers, and his method of requiring customers to pay for smaller purchases before selling larger quantities:

> Patterson: I'm like you. I wanna give motherfucker, uh, give em an O [ounce of narcotics]. What's that? That's an O. Bring me back a dollar cash for the narcotics] on that, I'll bring you two O's next time.
>
> CS: Um hum.
>
> Patterson: Bring me two dollars on the two O's, I'll give you four.

(Government's Santiago Proffer, at 33.) According to the government, Patterson and the CI resumed their discussion of the marijuana transaction at issue in this case "later in the conversation." The court is uncertain how much later the marijuana discussion occurred; if the marijuana discussion occurred several minutes later, the court is unwilling to admit this evidence of (apparent) cocaine dealing and will direct that those portions of the tape be redated.

---

[3] The government does not argue that this evidence is admissible under Rule 404(b).

The court has less difficulty with the July 16 conversation, in which Patterson and the CI discussed not only the firearms and heroin purchases charged here, but also made a brief reference to a purchase of PCP. The conversation proceeded as follows:

| | |
|---|---|
| Patterson: | All right, you know. You talk to the old man? |
| CS: | Um yeah. I talked to him yesterday. I told him look man, I told him, pretty much, I tried to explain it to him what's, what's going down. You know. |
| Patterson: | Right. |
| CS: | He said well don't even trip. Next, next, next time you know, uh, next time I do go, go to him it will be for maybe a football field [100 grams of heroin]. Maybe even two football fields [200 grams of heroin]. You know what I'm saying. He be cool. |
| Patterson: | O.K., no problem. |
| CS: | Um, my, like, um, like I was trying to tell you yesterday my, my boy [gun supplier] uh, he took off. Ah well, he hasn't taken off. I think, I think he leaving he leaving like either Sunday, Sunday or Monday. He gonna be gone a couple of weeks. Down there, down south you know. That way . . . |
| Patterson: | Oh yeah. |
| CS: | That way, yeah when, when he get back, back then boom you know go. To the, I'll, I'll, I'll, you know show you, show you oh, all the fireworks [firearms] he, that he brought me you know? |
| Patterson: | Um. What's up with the firewater? [PCP] |
| CS: | Hah? |
| Patterson: | Firewater [PCP]. |
| CS: | Ah, shit. Man you know I forgot about that man. Damn, I forgot, ah, hay, ah, ah, let me get back with you with that. Don't even trip. Let me call my boy. See what's up. |

(Government's Santiago Proffer, at 41.) The court believes these brief references to PCP are admissible because these statements were made during the same conversation during which Patterson was discussing the charged acts. Courts have routinely admitted statements regarding

9

other criminal acts made during conversations regarding the criminal transaction at issue in the case. *See, e.g., Gibson*, 170 F.3d at 681-82 (admitting discussion of possible gun transaction occurring within conversation regarding charged drug transaction); *United States v. Parkin*, 917 F.2d 313, 317 (7th Cir. 1990) (admitting statements regarding cocaine transaction occurring during charged marijuana sale). In this case, the government may also argue that Patterson's discussion of PCP immediately after the CI's reference to weapons is inconsistent with Patterson's insistence that he did not want guns, or did not want "real" guns.

Although the court is, thus, inclined to sustain Patterson's objection to the reference to cocaine purchases, the court concludes that the reference to a possible purchase of PCP is probative of Patterson's intent and knowledge, particularly if Patterson argues that he did not intend to purchase illegal drugs, or that he did not understand the CI's statements. With respect to the challenged language in the July 16, 2004, conversation, the court concludes that the probative value of these statements outweighs any danger of unfair prejudice.

### E.     Evidence of Defendant's Admissions that He Possessed Firearms

Finally, the government seeks to present evidence of a discussion between Defendant Patterson and the CI during which Patterson admitted that he already possessed a number of firearms. These statements, which occurred during conversations that took place throughout the spring and summer of 2004, culminated in the purchase of four weapons that are the subject of this indictment. In the course of these conversations, Patterson discussed previous purchases of numerous types of guns and ammunition and observed that he owned a number of weapons, including an AK-47. Patterson also explained that he was interested in purchasing smaller caliber firearms because he and his gang already had a sufficient stock of larger caliber weapons.

The government first urges that these statements are inextricably intertwined with the crimes charged in the indictment. Specifically, the government argues that these conversations

10

establish a prior criminal relationship between Patterson and the CI, and explain why he was interested in purchasing smaller caliber firearms. The court agrees with the government that this information falls within the inextricably intertwined doctrine insofar as it consists of "evidence concerning the chronological unfolding of events that led to the indictment." *Ramirez*, 45 F.3d at 1102, citing *United States v. Zarnes*, 33 F.3d 1454, 1469 (7th Cir. 1994).

Nevertheless, evidence not subject to the precepts of Rule 404(b) under the inextricably intertwined doctrine is still subject to the Rule 403 balancing test. *Ramirez*, 45 F.3d at 1103, citing *Hargrove*, 929 F.2d at 320; *Elder*, 16 F.3d at 737. The court recognizes that admission of this evidence could generate a substantial risk of unfair prejudice to the Defendant and will, therefore, reserve ruling on this issue. As noted earlier, Patterson has suggested he did not intend to purchase guns from the CI, or that he requested "replica" guns from the CI, not actual firearms. If Patterson does indeed pursue this theory of defense, statements in which he admits owning a number of large caliber weapons may well be relevant to show intent and admissible to impeach his defense.

## CONCLUSION

For the reasons discussed above, the government's motion *in limine* (Docket No. 130-1) is granted in part and denied in part without prejudice.

ENTER:

Dated: June 9, 2005

REBECCA R. PALLMEYER
United States District Judge

11