UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 04 CR 0705 |
| | ) | |
| AARON PATTERSON and | ) | Judge Rebecca R. Pallmeyer |
| MARK MANNIE | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Aaron Patterson and Mark Mannie are charged in a thirteen-count indictment with conspiracy to distribute heroin and marijuana, possession with intent to distribute heroin and marijuana, and illegal possession of a firearm, all stemming from a series of incidents between March and August 2004. On what was scheduled to be the first day of jury selection, June 30, 2005, Defendant Patterson moved for leave to proceed *pro se*. Upon being informed that the court would only accept motions made through his counsel, Patterson demanded that his attorneys withdraw from his case. During his angry outburst, Patterson announced that his supporters would protest outside the homes of his defense attorneys, and loudly recited his attorneys' addresses to the court audience. Following Patterson's removal from the courtroom, his court-appointed attorneys Demitrus Evans and Paul Camarena moved for leave to withdraw, citing Patterson's outburst as having created a conflict of interest interfering with their ability to effectively represent their client. Patterson has also moved to continue the trial to a later date. The court will address these motions in turn.

## DISCUSSION

I.   **Defense Counsel's Motion to Withdraw**

The Sixth Amendment to the Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."

U.S. CONST. amend. VI. This guarantee of effective assistance of counsel encompasses a right to conflict-free representation. *Griffin v. Camp*, 40 F.3d 170, 173 (7th Cir. 1994), citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980). The right to conflict-free representation does not, however, guarantee a "meaningful relationship" between the defendant and his counsel. *See Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). "Attorney-client conflicts only justify the grant of a substitution motion when 'counsel and defendant are so at odds as to prevent presentation of an adequate defense.'" *United States v. Walker*, 9 F.3d 1245, 1251 (7th Cir. 1993), citing *United States v. Morrison*, 946 F.2d 484, 498 (7th Cir. 1991).

In considering an attorney's motion for leave to withdraw, the court has an obligation to fully investigate the reasons underlying the request. After having done so, the court has the discretion to deny the motion "[u]nless there is a demonstrated conflict of interests or counsel and defendant are embroiled in an 'irreconcilable conflict' that is 'so great that it resulted in a total lack of communication preventing an adequate defense.'" *United States v. Cole*, 988 F.2d 681, 683 (7th Cir. 1993), quoting *United States v. Morris*, 714 F.2d 669, 673 (7th Cir. 1983). The Second and Tenth Circuits have identified a four-part test evaluating the propriety of a court's denial of a motion to substitute counsel. This test examines: (1) whether the defendant made a timely motion requesting new counsel; (2) whether the trial court adequately inquired into the reasons underlying the conflict; (3) whether the conflict between the defendant and his attorney was so great that it resulted in a "total lack of communication preventing an adequate defense"; and (4) whether the defendant himself "substantially and unjustifiably contributed to the breakdown in communication." *United States v. John Doe #1*, 272 F.3d 116, 122-23 (2d Cir. 2001) (citations omitted); *Romero v. Furlong*, 215 F.3d 1107, 1113 (10th Cir. 2000) (citations omitted).

Employing this four-part approach, neither Patterson nor his counsel can maintain that their motions are timely, coming as they did on what was scheduled to be the first day of jury selection. As to the second factor, whether the court has adequately inquired into the conflict, Mr. Patterson's threat to organize a protest at the homes of his two defense attorneys was made on the record in open court.[1] Following the outburst, the court met with Defendant and defense counsel (with the government's representatives present) to hear their motions. Attorney Paul Camarena cited Mr. Patterson's potentially threatening behavior. The court is aware, further, of Mr. Patterson's purported suspicion that Mr. Camarena's appointment to represent here is somehow suspect, a suspicion that is factually baseless. Attorney Demitrus Evans cited her own fears Mr. Patterson's refusal to come to court voluntarily, and his failure to honor her advice that he wear street clothing rather than his prison attire in the courtroom. The court is familiar with each of these matters and concludes, with respect to the third factor, that the conflict between Patterson and his counsel is not "so great that it [has] resulted in a total lack of communication preventing an adequate defense." *Cole*, 988 F.2d at 683, *quoting Morris*, 714 F.2d at 673; *John Doe #1*, 272 F.3d at 124, *quoting United States v. Simeonov*, 252 F.3d 238, 241 (2d Cir. 2001). Counsel have not identified any specific legal or factual issues on which they need input from Mr. Patterson and, although the rift between him and his attorneys has been heated of late, it does not appear to the court that these conflicts have prevented Patterson and his attorneys from conferring regarding matters related to his defense. To the contrary, Patterson has by all accounts taken an active role in his defense – perhaps at times too

---

[1] Mr. Patterson, it should be noted, is himself in custody. Presumably, his threat, to the extent it is credible, would be carried out by his supporters, some of whom have attended court hearings in this case.

active a role – and the court has confidence, despite defense counsel's misgivings, that they are capable of continuing to represent him effectively. Indeed, immediately after this court's oral denial of defense counsel's motion to withdraw, and after he had earlier in the day expressed fear for the safety of his family, Mr. Camarena was able to effective advocate on behalf of Patterson's right of self-representation. Defense counsel have a professional obligation to represent Mr. Patterson to the best of their abilities, and the court believes they are capable of meeting that obligation.

Finally, the court considers whether Patterson himself "substantially and unjustifiably contributed to the breakdown in communication" between him and his attorneys and "whether the allegedly irreconcilable differences can be largely attributed to [his own actions]." *John Doe #1*, 272 F.3d at 124, citing *Romero*, 215 F.3d at 1113. There is little doubt here that Patterson himself has created all of the problems with his attorneys by refusing to cooperate with them and by making threatening remarks against them in open court. The conflicts between Mr. Patterson and his lawyers are entirely of Mr. Patterson's own creation. A grant of his motion for continuance, and subsequent appointment of new counsel, is unlikely to resolve these issues so long as Mr. Patterson is determined to do everything within his power to delay his trial.[2] Regrettably, the court believes

---

[2] In addition, to the extent that Patterson's conflicts with his counsel are not merely delay tactics, his disagreements over trial strategy have revolved around his insistence to present certain defenses – entrapment, public authority, selective prosecution – that have been already precluded by this court as having no basis in law. Such disagreements will inevitably arise anew should the court appoint new counsel. *See United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) (rejecting habeas challenge to denial of motion for leave to withdraw from case where irreconcilable differences cited in support of the motion consisted involved defendant's insistence on presenting a defense with no legal validity). Moreover, for reasons explained below, the court is unwilling to accede to Mr. Patterson's desire to proceed *pro se*.

that appointment of new counsel would only result in a needless delay and the development of similar conflicts between Patterson and his new attorney(s).

As part of their motions to withdraw, Ms. Evans and Mr. Camarena have urged that Patterson's threats against them have created an actual or *per se* conflict of interest, rendering them unable to continue as defense counsel. In *John Doe #1*, the Second Circuit considered a denial of a defense attorneys motion for leave to withdraw on the basis that his a conflict had been created by the defendant's "extremely aggressive" behavior that, at times, "verg[ed] on uncontrollable violence." *John Doe #1*, 272 F.3d at 120. During the course of his representation, the defendant had "repeatedly grown so agitated and hostile – shouting, screaming, throwing papers and around the room making intimidating approaches to counsel." *Id.* The attorney reported that the defendant had also made veiled threats against him, such that he feared for his personal safety as well as that of his family. *Id.* Nevertheless, the court rejected a claim that the defendant had received ineffective assistance of counsel as a result of a conflict of interest between him and his attorney. Identifying three types of conflicts of interest, the Second Circuit held that a *per se* conflict requiring automatic reversal without a showing of prejudice only exists where trial counsel is (1) not authorized to practice law or (2) implicated in the crime for which the defendant is on trial. *Id.* at 125, *citing Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000); *United States v. Cancilla*, 725 F.2d 867, 870 (2d Cir. 1984); *Waterhouse v. Rodriguez*, 848 F.2d 375, 383 (2d Cir. 1988). The court also rejected a claim that there was an actual conflict of interest, carrying a presumption of prejudice. *John Doe #1*, 272 F.3d at 125-26. Such a conflict exists "when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *Id.* at 126, *quoting Armienti*, 234 F.3d at 824. Although the

court allowed that the defendant and his counsel had disagreed as to certain aspects of his defense, the court concluded that a defendant "cannot establish an actual conflict of interest merely by 'expressing dissatisfaction with [the] attorney's performance.'" *Id.*, *quoting United States v. Moree*, 220 F.3d 65, 71 (2d Cir. 2000). On this point, the court recognized the potentially dangerous consequences of allowing criminal defendants to create conflicts in such a manner:

> Additionally, we agree with the government that defining conduct of a threatening or violent nature as creating an actual conflict of interest would potentially encourage defendants to take such action in the hopes of having an avenue to later seek reversal of a conviction.[3]

*Id.* at 126. This court concurs in the Second Circuit's assessment. While sympathetic to the plight of Ms. Evans and Mr. Camarena, the court is loathe to reward Mr. Patterson's conduct and allow Mr. Patterson to manipulate and abuse the system of justice in an effort to achieve his aims by extralegal methods.

Importantly, the Sixth Amendment right belongs to Patterson, not his defense counsel. Moreover, this right may be waived by a defendant's own conduct. *See United States v. Levine*, 794 F.2d 1203, 1206 (7th Cir. 1986), *citing United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975) (holding that defendant had waived his right to conflict-free reorientation when he deliberately creating a conflict of interest by discharging his public defender and retaining private counsel with whom there existed a conflict of interest). In light of the fact that a defendant can waive his right to representation, the court believes that a defendant may correspondingly waive his right to counsel

---

[3] The court also expressed the possibility that such threats of violence would only increase defense counsel's motivation to obtain an acquittal, thus placating his angry client. *Id.* Perhaps for this reason, the Seventh Circuit does not appear to have treated this issue as a conflict of interest.

of his choice, where he has shown an unwillingness to cooperate with any counsel. *See Levine*, 794 F.2d at 1206 ("[I]t remains clear that, since a defendant may waive his right to be represented by counsel altogether, there is no basis to say that a defendant cannot waive the right to counsel free from even serious conflict of interest.").

For their part, defense counsel do not enjoy an absolute right to withdraw, even in situations in which their defendant's behavior has been violent or threatening. In *Hall v. Washington*, 106 F.3d 742 (7th Cir. 1997), the Seventh Circuit consider a trial court's denial of a defense attorney's motion to withdraw in circumstances far more egregious than the present. In *Hall*, the defendant physically assaulted defense counsel the day before trial, striking counsel on the head with a chair. *Id.* at 745. Noting that, despite this incident and defense counsel's understandable fears, the defendant had routinely passed notes and made oral suggestions to his counsel regarding his defense, the court concluded that counsel and defendant were not "so at odds as to prevent presentation of an adequate defense." *Id.* at 751, *quoting Walker*, 9 F.3d at 1251. Regarding the safety concerns of defense counsel, the court cautioned that the attorneys themselves did not have an unfettered right to withdraw:

> Where, as here, a motion to withdraw is denied, counsel are not free to ignore the court's finding because of their personal dislike for their client. While [defendant] was certainly not an ideal client, counsel were still required to provide constitutionally adequate representation until such time as the court excused them.

*Hall*, 106 F.3d at 751. Similarly, this court expects that Ms. Evans and Mr. Camarena will recognize their professional responsibilities to Mr. Patterson, and provide vigorous and effective representation unless excused by the court.

7

## II. Defendant's Motion to Proceed *Pro Se*

The Supreme Court has recognized that "[i]mplicit in the Sixth Amendment right to counsel is the defendant's right to self-representation." *United States v. Brock*, 159 F.3d 1077, 1079 (7th Cir. 1998), citing *Faretta v. California*, 422 U.S. 806 (1975). The right to self-representation is not, however, absolute. A court "may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Brock*, 159 F.3d at 1079, citing *Faretta*, 422 U.S. at 835 n.46.

In light of Mr. Patterson's persistent refusal to obey even the most basic standards of courtroom decency, the court has no difficulty concluding that he has forfeited his right to self-representation. Although Patterson's behavior has thus far only interrupted the pretrial portions of the current proceedings, he has shown no indication that he will be willing to comport himself with decency and respect befitting this courtroom during the trial. *See Brock*, 159 F.3d at 1080 (upholding trial court's denial of defendant's request to proceed *pro se* based on pretrial conduct where trial court had concluded that "there was a strong possibility that [the defendant] would continue to be disruptive at trial"). In addition, the court believes it has an obligation to protect the jurors from the types of threats that Patterson has made against his attorneys. To allow such behavior would make a mockery of the judicial proceedings and could threaten the integrity of the jury process. As importantly, allowing Mr. Patterson to represent himself could prejudice his co-defendant, Mr. Mannie.

For these same reasons, the court is not inclined to allow Mr. Patterson to proceed *pro se* with the assistance of co-counsel in a "hybrid representation." It is well-recognized that the Sixth Amendment does not guarantee a criminal defendant the right to hybrid representation. *United*

*States v. Chavin*, 316 F.3d 666, 671 (7th Cir. 2002) (citations omitted). Although within the discretion of the court, hybrid representation is "disfavored." *Id.*; *citing United States v. Kosmel*, 272 F.3d 501, 506 (7th Cir. 2001); *Cain v. Peters*, 972 F.2d 748, 750 (7th Cir. 1992); *United States v. Oakey*, 853 F.3d 551, 553 (7th Cir. 1988). Such representation "allows a defendant to address the jury, in his capacity as counsel, without being cross-examined, in his capacity as defendant." *Chavin*, 316 F.3d at 671; *Oakey*, 853 F.2d 553. In pretrial proceedings, Patterson has insisted on expressing his views about law enforcement, his unfortunate history with the criminal justice system, and his baseless conspiracy theories. The court presumes he would make similar pronouncements during the jury proceedings, were he permitted to represent himself. These considerations only add to the court's reluctance to allow Mr. Patterson to proceed *pro se*, whether on his own or with assistance from co-counsel. Defendant's motion is denied.

### III. Defendant's Motion for a Continuance

Although a court "may not arbitrarily deny a criminal defendant the right to retain his own counsel . . . it [is] not required to allow a last-minute change in counsel to disrupt its schedule." *Cole*, 988 F.2d at 683; *United States v. Solina*, 733 F.2d 1208, 1211 (7th Cir. 1984). In both *Cole* and *Solina*, the Seventh Circuit upheld a district court's refusal to grant a continuance for retained counsel to prepare for trial when competent appointed counsel was prepared to proceed to trial as scheduled. *Cole*, 988 F.2d at 684; *Solina*, 733 F.2d at 1211. The court has already granted two continuances in this case, pushing the trial back from an original start date in February to late May and then again, at Defendant's urging, to June 30. Having denied defense counsel's motion for leave to withdraw, and Patterson's motion for leave to proceed *pro se*, the court sees no need to delay the trial any further.

9

## CONCLUSION

For the reasons discussed above, defense counsel's motion for leave to withdraw, and Defendant's motions for leave to proceed *pro se* and to continue the trial date are all denied.

ENTER:

Dated: July 1, 2005

REBECCA R. PALLMEYER
United States District Judge