UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 04 CR 0705-1 |
| | ) | |
| AARON PATTERSON | ) | Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Defendants Aaron Patterson and Mark Mannie are charged in a thirteen-count indictment with conspiracy to distribute heroin and marijuana, possession with intent to distribute heroin and marijuana, and illegal possession of a firearm, all stemming from a series of incidents between March and August 2004. Defendant Patterson challenges his competence to stand trial.

A criminal defendant's competence turns on two issues: (1) whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and (2) whether he has "a rational as well as factual understanding of the proceedings against him." *United States v. Collins*, 949 F.2d 921, 927 (7th Cir. 1991), *quoting Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam); *Bleitner v. Welborn*, 16 F.3d 1225, 1994 WL 28368, *1 (7th Cir. 1994). Only the former – Defendant's ability to assist in his own defense – is at issue in this case. For the reasons discussed below, the court believes Defendant Patterson has the ability to consult with his attorneys and assist in the preparation of his defense.

### Testimony of Dr. Stafford Henry

In support of Defendant's competence to stand trial, the government presented expert testimony and a psychiatric report from a Dr. Stafford Henry, a board-certified psychiatrist who has conducted some 1,000 competency examinations.[1] Dr. Henry's report was completed after

---

[1] Dr. Henry earned his M.D. from the State University of New York and completed a
(continued...)

conducting a face-to-face interview with Defendant while the latter was in custody. Dr. Henry found generally that Patterson "was cognitively intact, possessed excellent command of the English language, and was able to discuss events in both the immediate and remote past without difficulty." (Report of Dr. Stafford C. Henry, dated May 25, 2005, at 7.) During the examination, Patterson "responded to questions thoughtfully and deliberately and was able to clearly communicate in a logical, organized and reality-based fashion." (Id.) As part of the interview process, Dr. Henry asked Patterson whether he was aware of the purpose of various aspects of the criminal trial process. For example, when asked about the role of his attorneys, Patterson stated that "They investigate my case. They respond to the evidence that the prosecutors put on. They analyze all of the evidence in my case. They argue my case. They file motions." (Government's Competency Evaluation Report, hereinafter "Govt's Report," at 3.) When asked about the respective roles of the judge and jury, Patterson stated that the judge acts as "a referee and mediator," deciding the admissibility of evidence, bond, and competency. (Id.) Patterson also related that the judge is responsible for "weighing aggravating and mitigating circumstances and sentencing guidelines to determine the sentence." (Id. at 4.) As for the jury, Patterson indicated his awareness that he had the option of having the case tried before either a judge or jury. (Id.) In Patterson's words, the jury "replaces a judge . . . [to] decide innocence of guilt. It's another avenue." (Id.) More generally, Patterson told Dr. Henry that he was aware of the number of counts against him, as well as the nature of the underlying charges. (Id. at 2-3.) When asked what he would do if he believed a witness at trial were lying, Patterson responded that he would "probably bring it to the lawyer's attention or interject." (Id. at 4-5.)

---

[1](...continued)
residency in the Department of Psychiatry at the University of Michigan. (Transcript, May 27, 2005, at 45-46.)

2

During the competency hearing, Dr. Henry testified that Patterson is "well aware that his attorneys represent him," and that he suffered from no mental disease or defect that "would preclude him from not speaking in court should he choose [not] to." (Transcript of Competency Hearing, May 27, 2005, at 22.) Regarding Patterson's interruptions, Dr. Henry stated his belief that such behavior "needs to be put into context." (Id. at 26.) Patterson has characterized himself as a "freedom fighter" and a "stuntman"; consistent with this self-understanding, Dr. Henry observed, Patterson "go[es] to extremes to get his point across." (Id.) As an example, Dr. Henry cited one instance in which Patterson interrupted his attorney stating, "This needs to get out, Demitrus. I don't want to be disruptive, but this needs to get out." (Id. at 26-27.) In Dr. Henry's opinion, Patterson's attempt to direct or take an "active and unconventional role" in his defense is consistent with his self-characterization of himself as a freedom fighter or revolutionary. (Id.) Importantly, Dr. Henry concluded that, to the extent that Patterson chooses not to defer to his defense counsel and continues to be disruptive in court, "it would be completely within conscious control and would be completely unrelated to a mental disease or defect." (Id. at 30.)

### Defense Witnesses

Against Dr. Henry's conclusion, the defense presented testimony and reports from two mental health experts, Dr. Steve Farmilant and Dr. William Hillman,[2] as well as a report by Dr. John Wilson. Dr. Farmilant had never before performed a competency examination and was unfamiliar with the legal standard for competency. After conducting an examination of Patterson, Dr. Farmilant concluded that he "is experiencing symptoms of anxiety, depression, and post-traumatic stress, which are significantly impairing his ability to reason logically, cooperate with counsel and the

---

[2] Each of the defense experts holds a Psy. D. degree; Dr. Farmilant from the Adler School of Psychology in Chicago, Illinois, and Dr. Hillman from the Forest Institute of Professional Psychology in Springfield, Missouri. (Transcript, June 27, 2005, at 3.)

3

court, and act in his own best interest." (Report of Dr. Steve Farmilant, dated June 14, 2005, at 4.) Dr. Farmilant found Patterson to have "significantly elevated" scores in the areas of anxiety, paranoia, and depression. (*Id.* at 3.)

Regarding Patterson's understanding of the courtroom proceedings, Dr. Farmilant testified that he believes Patterson understands the proceedings, as well as the role of the judge, prosecutors, and his own defense attorneys. When asked about the role of his defense attorneys, for example, Patterson responded that he believes them to be working for him and understands that they are responsible for giving him counsel, but that it was his own responsibility to make all decisions because it was his "own trial and his own life is on the line." Dr. Farmilant nevertheless concluded that Patterson "doesn't understand the role of the defendant" in a criminal proceeding. In Dr. Farmilant's opinion, Patterson believes that his trial presents an opportunity to "fulfill a life mission" by communicating a message. For Patterson, this opportunity takes precedence over concerns of guilt or innocence. Dr. Farmilant concluded that Patterson's behavior in court demonstrates that he lacks the ability to understand the effect of his behavior as it relates to the court proceedings.

Significantly, Dr. Farmilant did not suggest that Patterson lacks an understanding of the nature of the proceedings or of the role of the judge, prosecutors, and his defense attorneys. In any event, to the extent that Dr. Farmilant suggested that Patterson is not competent to stand trial, the evidence he cited does not support that conclusion, in this court's view. First, regarding the elevated numerical readings, Dr. Farmilant could not conclude that the anxiety, stress, and depression from which Patterson suffers is significantly more severe than that experienced by the average person being held in custody while under federal indictment. The court assumes that facing indictment on narcotics and weapons charges would generate anxiety and depression in many, perhaps most, individuals. Nor is paranoia an unusual or pathological reaction to criminal charges. Patterson's

4

history may give him particular cause for anxiety, depression, and paranoia. Dr. Farmilant acknowledged that he can not say that Patterson's scores on these measures are greater than those of other defendants facing trial, however. The court is not prepared to assume a defendant is incompetent for these reasons.

Dr. Farmilant's credibility suffered, in this court's eyes, by his characterization of Mr. Patterson as a "highly moral" person. Dr. Farmilant offered this opinion despite, or perhaps because of, Patterson's disclosure that he is a gang leader responsible for enforcing loyalty and disciplining fellow gang members for "violations." In discussing the matter of Patterson's morality, Dr. Farmilant himself cited Patterson's statement that "the world is full of pit bulls and somebody has to hold the leash," an apparent reference to Patterson's responsibility for disciplining fellow gang members. When pressed further regarding Patterson's past convictions, Dr. Farmilant stated that it was his belief that Patterson had broken the law on some occasions, but that he had done so in the name of morality. As a psychologist, Dr. Farmilant is free to entertain the possibility that criminal conduct may be understood or explained as a function of misguided good intentions. This court, however, is not prepared to conclude that a defendant's belief that his unlawful conduct is justified excuses him or renders him incompetent under relevant legal standards.

In addition to the testimony of Dr. Farmilant, the defense presented a report prepared by a Dr. William Hillman, a clinical psychologist who has conducted approximately 25 competency examinations. Relying heavily on Dr. Farmilant's diagnosis of post-traumatic stress disorder, Dr. Hillman expressed his opinion that Patterson is unable to appreciate the importance of his criminal trial, and thus unable to assist his counsel in the preparation of his defense. On this point, Dr. Hillman concluded that Patterson "believes that his trial is a forum to present himself as a victim of a corrupt system and this notion interferes with his ability to cooperate with a system which he

5

believes to be out to get him." (Report of Dr. William Hillman, dated June 22, 2005, at 3-4.) According to his testimony, Dr. Hillman based this conclusion on the fact that Patterson "has his own notions about what should happen in his defense," and that "[t]hese notions aren't consistent with [those of] his lead attorney at this time." (Transcript of Competency Hearing, June 27, 2005, at 38-39.) He cited Patterson's occasional unwillingness to accept direction from his attorneys, and his occasional outbursts in court, as "a central feature" of his incompetence. (Id. at 68-69.) Nevertheless, Dr. Hillman stated that during his examination, Patterson "was cooperative, attentive, and alert." (Hillman Report, at 3.) He also found Patterson to be "oriented and articulate about the circumstances related to his current charges and his defense." (Id.)

The court is not persuaded by Dr. Hillman's conclusions of lack of competence. First, Dr. Hillman did not independently diagnose Patterson as suffering from PTSD; rather, he relied on Dr. Farmilant's conclusions and diagnosis. Dr. Hillman made clear during his testimony that in order to confirm the diagnosis he would need to see Patterson again. (Transcript, June 27, 2005, at 28.) For the reasons explained earlier, the court concludes that the fact that Patterson suffers from PTSD, despite its severity, does not render him incompetent. Dr. Hillman conceded under cross-examination that Patterson's conflicts with his attorneys would not, standing alone, have led him to the conclusion that Patterson was incompetent to stand trial in the absence of his clinical history and PTSD diagnosis. (Transcript, June 27, 2005, at 39.)

Dr. Hillman did emphasize Patterson's frequent outbursts and desire to control most or all aspects of his defense. Though he equivocated to some degree, Dr. Hillman's testimony made clear that he believes Patterson's desire to control his own case to be the central feature illustrating his

own incompetence.[3] The court is uncertain that it shares Dr. Hillman's views concerning the impropriety of Defendant Patterson's desire to control the defense of the charges against him. As the court understands the role of defense counsel, the attorney is expected to explain to his or her client that certain decisions are to be made by the client alone – including whether to enter a guilty plea whether to choose a bench or jury trial, whether to testify, and whether to appeal. The attorney ordinarily makes decisions concerning trial strategy, including what motions to file, what witnesses to call, and what evidence to present. See generally Compendium of Standards for Criminal Defense, available at http://www.ojp.usdoj.gov/indigentdefense/compendium/standardsv5/v5f.htm. Although Patterson's behavior may render it difficult for counsel to represent him, the court cannot accept Dr. Hillman's apparent belief that Patterson's failure to cooperate docilely and to accept all of his attorney's advice renders him incompetent. He emphasized Patterson's apparent insistence on engaging in courtroom outbursts and adopting a defense strategy at odds with his attorneys' direction. Again, however, the court notes that it is (perhaps regrettably) not unusual for an individual to decline to accept his attorney's advice and to behave in ways that the attorney has discouraged. If such a course of conduct were deemed sufficient to establish incompetence, the court presumably would be required make a finding of incompetence for any defendant who, facing overwhelming evidence of guilt, nevertheless declines his attorney's advice that he enter a guilty plea and chooses instead to proceed to trial.

The defense also presented a report by Dr. John Wilson, who concurred in Dr. Farmilant's diagnosis of PTSD. Dr. Wilson did not, however, conduct an independent examination of Patterson. Instead, he based his conclusion on Dr. Farmilant's report, as well as a number of newspaper articles

---

[3] For example, when first asked about who, in general, controls the conduct of a criminal case, the defendant or his attorney, Dr. Hillman responded: "My opinion is that there is a struggle going on between them and that this goes to Mr. Patterson's clinical condition." (Id. at 40.)

7

covering the ongoing proceedings in Patterson's case. (Report of Dr. John Wilson, dated June 20, 2005, at 1, 5.) Dr. Wilson did not state a conclusion regarding Patterson's competency to stand trial in his report, nor did he testify during the competency hearing.

Analysis

Once the issue of a criminal defendant's mental competency has been raised, the government bears the burden of proving that the defendant is competent by a preponderance of the evidence. *United States v. Teague*, 956 F.2d 1427, 1432 n.10 (7th Cir. 1992), citing *United States ex. rel. S.E.C. v. Billingsley*, 766 F.2d 1015, 1023-24 (7th Cir. 1985); *United States v. DiGilio*, 538 F.2d 972, 988 (3d Cir. 1976); but see *United States v. Morgano*, 39 F.3d 1358, 1373 (7th Cir. 1994) ("The starting point in all this is the notion that a criminal defendant is presumed to be competent to stand trial and bears the burden of proving otherwise."), citing *Chichakly v. United States*, 926 F.2d 624, 633 (7th Cir. 1991). The government has met its burden here. Although his testimony was combative and occasionally impatient, the court is persuaded by Dr. Henry's conclusion that Patterson is a highly intelligent person with a sophisticated understanding of the legal proceedings against him, and of his role as a criminal defendant.

Importantly, Dr. Henry testified that Patterson's courtroom outbursts are not the result of a mental illness, but rather the product of a conscious choice designed to attract media attention. These conclusions fully comport with the court's own observation of Patterson throughout the course of the current proceedings. Although Patterson has timely been disruptive of the courtroom proceedings, he has routinely shown that he has the ability, when so motivated, to be present in court without undue outbursts or disruption. Moreover, Patterson has time and again demonstrated the utmost concern for and understanding of the severity of the charges which he faces, and the seriousness of the present proceedings. Patterson has remained at all times attentive and observant

8

of the courtroom proceedings, confers frequently with his attorneys, and regularly offers his own input on legal and factual issues. Of course, as defense counsel points out, Patterson has at times been perhaps too active a participant in the courtroom proceedings – interrupting, at various times, defense counsel, the prosecution, and even the judge – yet the court has seen or heard nothing to suggest that these outbursts are uncontrollable or are the product of anything other than Patterson's conscious and voluntary choice. Patterson himself has stated that he is "playing to the media," suggesting that his impromptu speeches and interruptions are designed to attract media attention to what he sees as the injustice and corruption underlying his prosecution. This strategy may well be ill-advised and self-destructive. That he may choose poorly, however, or act contrary to the advice of counsel, does not establish that he is incompetent to stand trial.

ENTER:

Dated: June 29, 2005

REBECCA R. PALLMEYER
United States District Judge