UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 04 CR 0705 |
| | ) | |
| AARON PATTERSON and | ) | Judge Rebecca R. Pallmeyer |
| MARK MANNIE | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Aaron Patterson and Mark Mannie are charged in a thirteen-count indictment with conspiracy to distribute heroin and marijuana, possession with intent to distribute heroin and marijuana, and illegal possession of a firearm, all stemming from a series of incidents between March and August 2004. As documented in the court's previous orders, the proceedings have been marred by interruptions, outbursts, and delays. After the jury was selected, but before they were sworn, Defendant Patterson's lead attorney, Demitrus Evans, withdrew from the case and the court appointed Attorney Tommy Brewer to replace her. Attorney Paul Camarena, whom the court had appointed several weeks earlier to assist Ms. Evans, remains counsel of record.

Defendant Patterson has filed a notice of appeal from the court's decision to appoint Mr. Brewer. Although Mr. Patterson appears now to be communicating effectively with both of his lawyers, the court deems this notice an objection to Mr. Brewer's appointment. For the reasons set forth here, the objection is overruled.

## PROCEDURAL BACKGROUND

As Mr. Patterson well knows, Ms. Evans repeatedly sought leave to withdraw from this case. On the eve of jury selection, Ms. Evans renewed her motion, asserting that she was not prepared to proceed. Though she herself had sought numerous continuances, Mr. Patterson accused her of

"rushing me to trial," angrily announced that she and Mr. Camarena "aren't my lawyers," and attempted to fire them both. Unable to withdraw from this case without leave of court, Mr. Camarena and Ms. Evans remained; in an apparent effort to poison his relationship with them and require their withdrawal, Mr. Patterson loudly announced the home addresses of each of his attorneys in a crowded courtroom and urged his followers in the courtroom audience to engage in a protest at their homes. Upset and frightened, counsel again sought leave to withdraw. Again, the court denied their motions; the court believed Mr. Patterson's conduct was a manipulative effort to obtain a further trial delay, and was concerned that discharging these lawyers and postponing the trial date would only encourage such manipulation.[1] In an order issued on July 1, the court more fully explained that ruling.

On the morning of June 30, Mr. Patterson refused to change into civilian clothing and declined to be brought over from the MCC for jury selection. The court was reluctant to accept a hearsay statement that Mr. Patterson was unwilling to appear for the process of jury selection and therefore directed that he be brought over by force. Soon after he arrived, Mr. Patterson engaged in another noisy outburst in which he announced his plan to incite "civil disobedience" at the home of his lawyers, again urging his followers in the courtroom to surround those locations with pickets and chains. At this point, both attorneys again moved for leave to withdraw; again, the court denied

---

[1] The court's conclusion regarding Mr. Patterson's competence, and its suspicion concerning Mr. Patterson's motives, were confirmed by the content of a subsequent recorded conversation between Mr. Patterson and unidentified woman. In that conversation, Mr. Patterson referred to an incident that took place during the jury selection process, in which one of Mr. Patterson's supporters shouted at potential jurors. Mr. Patterson believed this incident was the reason that several jurors were discharged; he gratefully characterized this supporter's misconduct as having "bought me some time."

2

their motions. By this time, more than 70 jurors had completed questionnaires. The court excused them for the day, directing half of them to return at 9:30 on Friday, July 1, and the remaining group to return at 12:30 that afternoon.

The following morning, Mr. Patterson came to court voluntarily, and the first group of some 30 potential jurors reported to the courtroom for jury selection. As the court began the process of interviewing these prospective jurors, Mr. Camarena called for a sidebar and reported that Mr. Patterson was leaning on his papers in a menacing way and interfering with his ability to proceed. The court excused the jurors and attempted to question Mr. Patterson about his conduct. Mr. Patterson flew into a rage, shouting at the court and at his lawyers. The court directed that he be removed, and Mr. Patterson resisted the efforts of three law enforcement officers; threw himself on a courtroom table, fracturing it; fell to the floor, cursing and screaming; and demanded that the court and his own attorneys "get the f– off my case!"[2]

As Mr. Patterson was being removed, Ms. Evans herself became visibly upset, threw her papers to the table and shouted at the court, in tears, that she was off the case and would not return. During the hours that followed, the court and Mr. Camarena made repeated telephone calls to Ms. Evans, none of which were returned. The court ultimately signed a warrant for Ms. Evans's arrest. She reappeared in court at 3:30 in the afternoon, accompanied by counsel who apologized on her behalf and represented that she would meet her responsibilities to her client and the court when the

---

[2] From that moment until the morning of July 21, 2005, Mr. Patterson did not return to court. Despite repeated invitations from the court, conveyed through his attorneys and through MCC counsel, he refused to return peacefully to the courtroom and declined to participate by way of videoconference equipment that would enable him to see and hear the courtroom proceedings from the MCC. On the morning of July 21, Mr. Patterson appeared in person and since then has participated peacefully in this trial.

trial resumed the following Tuesday. Because the morning group of 30+ jurors had heard the courtroom commotion, the court excused them from further service. The remaining jurors, who were not aware of these events, were directed to return the following Tuesday, July 5.

Jury selection took three more days. By Friday, July 8, 18 jurors had survived cause and peremptory challenges. All 18 appeared for trial and the court was prepared to hear opening statements. Before the jurors were called in, Ms. Evans presented two motions, one relating to surveillance tapes the government expected to introduce and a second relating to a summary chart the government proposed to use during its opening. In the motion relating to surveillance tapes, Ms. Evans asserted that the court had refused to listen to the surveillance tapes, an assertion that Ms. Evans knew to be false: to the contrary, at Ms. Evans's request, the court had only that previous afternoon spent hours listening to tapes that Ms. Evans herself had furnished. When the court overruled Ms. Evans's objections to the tapes and the chart, she again lost her temper and stormed out of the courtroom for a second time, angrily accusing the court of requiring her alone to "follow the rules." The court was again required to excuse the jurors for the remainder of the day.

Ms. Evans's departure left 18 jurors waiting, jeopardized a long-scheduled trial, and threatened the Speedy Trial rights of Patterson's co-Defendant, Mark Mannie. By her impulsive departures from the courtroom, Ms. Evans abandoned her responsibility to her client and to the court. She jeopardized the progress of a trial the court had already continued twice at her behest. She caused the loss of several hours of juror services and abused the time of the court, the prosecutors, her co-counsel, and the attorney for the co-Defendant.

At this difficult juncture, Attorney Tommy Brewer, who had been counsel of record for Defendant Patterson at the time of the indictment, stepped forward and advised the court that, with

4

a few additional days, he could be ready to step back into the case and accept appointment as Mr. Patterson's lead counsel. The court has concluded that Mr. Patterson's disputes with his attorneys are naked efforts to delay the trial in this case, and that his in-court behavior precludes any confidence that the court might, consistent with fairness to the proceedings and to the rights of his co-Defendant, permit Mr. Patterson to represent himself. As noted, Mr. Brewer represented Mr. Patterson for several months after the return of the indictment, having withdrawn in February. He had access early on to the discovery materials and, even after his withdrawal, had continued to attend many of the pre-trial proceedings in this case. Mr. Brewer has substantial criminal law experience as a former state prosecutor, a federal agent, and a criminal defense attorney. He has tried more than 50 murder cases to verdict. He has a long relationship with Mr. Patterson that continued even after his formal withdrawal from this case earlier this year. Finally, as noted, he was prepared to proceed in this trial with only a very brief continuance.

The court directed Mr. Brewer and Mr. Camarena to attempt to meet with Mr. Patterson and return to the courtroom after a one-hour recess. Ultimately, the court appointed Mr. Brewer as lead counsel, and continued the trial to Tuesday, July 12.

By appointing Mr. Brewer, the court effectively granted Ms. Evans's repeatedly-voiced requests for leave to withdraw and relieved her of any official role in Patterson's defense, though the court indicated that Ms. Evans might assist Mr. Brewer and Mr. Camarena, if her assistance was required and/or requested. Despite the fact that Ms. Evans's departure from the case occurred after he had repeatedly declared that he had fired her, and that she no longer represented him, Patterson has now filed a notice of appeal, arguing that his Sixth Amendment right to counsel has been violated by the court's removal of Ms. Evans and appointment of Mr. Brewer.

## DISCUSSION

Under the Sixth Amendment, a criminal defendant has a qualified right to retain counsel of his choice to conduct his defense in a criminal case. *United States v. Moya-Gomez*, 860 F.2d 706, 723 (7th Cir. 1988), *citing Matter of Klein*, 776 F.2d 628, 633 (7th Cir. 1985); *Ford v. Israel*, 701 F.2d 689, 692 (7th Cir. 1983). In *Powell v. Alabama*, 287 U.S. 45, 52 (1932), the Supreme Court observed that a criminal defendant "should be afforded a fair opportunity to secure counsel of his own choice." Nevertheless, the Sixth Amendment right to counsel "is not solely, or even primarily, concerned with ensuring that a criminal defendant be provided with counsel of his own choice." *Moya-Gomez*, 860 F.2d at 723-24. Rather, the "right was designed to assure fairness in the adversary criminal process, where an unaided layman might have great difficulty arguing the law or in coping with an intricate procedural system." *United States v. Brown*, 79 F.3d 1499, 1505 (7th Cir. 1996) (internal quotations omitted), *citing Wheat v. United States*, 486 U.S. 153, 158 (1988); *United States v. Morrison*, 449 U.S. 361, 364 (1981); *Powell*, 287 U.S. at 69. In light of this focus, "in evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.'" *Moya-Gomez*, 860 F.2d at 723-24, *quoting United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984). "Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* (citations omitted).

In the context of an indigent defendant, the Supreme Court has interpreted the Sixth Amendment as requiring the government to provide a lawyer to a criminal defendant too poor to afford one. *See Gideon v. Wainwright*, 372 U.S. 335 (1963). This requirement does not, however,

6

grant a criminal defendant the right to have appointed counsel of his choice. Rather, government's obligation is satisfied when "the court appoints competent counsel who is uncommitted to any position or interest which would conflict with providing an effective defense." *United States v. Ely*, 719 F.2d 902, 904 (7th Cir. 1983), *quoting United States v. Davis*, 604 F.2d 474, 479 (7th Cir. 1979).

Patterson has not explained how his Sixth Amendment right to counsel was violated by the court's grant of Ms. Evans's motion for leave to withdraw and subsequent appointment of Mr. Brewer as lead counsel. Ms. Evans's departure from this case occurred after Patterson himself had repeatedly attempted to fire her, exclaiming in open court that she (and co-counsel Paul Camarena) no longer represented him. Having gone to extreme lengths to obtain Ms. Evans's removal from his defense, including shouting her home address to audience members in an attempt to intimidate her and force her withdrawal, Patterson cannot now complain that the court has granted her motion for leave to withdraw.

Nor can Patterson credibly suggest that Mr. Brewer is anything other than a competent and able attorney. Mr. Brewer withdrew from the case early on, not, as Patterson claims, at Patterson's request, but rather due to Patterson's "refusal to meet and consult with Attorney Brewer while . . . incarcerated at the Metropolitan Correction Center." (Motion to Withdraw as Attorney, Docket No. 53-1, at 1.) Although Patterson claims that Ms. Evans has much more knowledge of his case than Mr. Brewer, the court's own observations suggest otherwise. Mr. Brewer is well-prepared and effective, and he is assisted here by Mr. Camarena, who was appointed as co-counsel to Ms. Evans in May. The court suspects that Patterson's notice of appeal is no more than another attempt to delay the courtroom proceedings. Mr. Patterson himself attempted to force Ms. Evans's withdrawal and her own conduct gave the court no choice other than to grant her motion. Mr. Brewer and Mr.

7

Camarena are providing an effective defense of Mr. Patterson in light of these circumstances. His objection is overruled.

ENTER:

Dated: July 22, 2005

REBECCA R. PALLMEYER
United States District Judge